**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GAIL FUNG, <br><br> Plaintiff, <br><br> v. <br><br> LIBERTY UNIVERSITY, <br><br> Defendant. | Civil Action No. 25-367 (SDW) (JSA) <br><br><br><br> **OPINION** |

**JESSICA S. ALLEN, U.S.M.J.**

Before the Court is Defendant Liberty University's ("Liberty") motion to dismiss the Complaint for lack of personal jurisdiction, improper venue, and insufficient service of process, pursuant to Federal Rules of Civil Procedure 12(b)(2), (b)(3), and (b)(5), or in the alternative, to transfer venue to the United States District Court for the Western District of Virginia, pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406. (ECF Nos. 14, 18). *Pro se* Plaintiff, Gail Fung, opposes the motion. (ECF No. 16). On February 18, 2025, the Honorable Susan D. Wigenton, U.S.D.J. referred the motion to the Undersigned. No oral argument was heard. *See* Fed. R. Civ. P. 78(b).

For the reasons set forth below, and for good cause shown, Liberty's motion to transfer this case to the Western District of Virginia, pursuant to Section 1404(a), is **GRANTED**. In light of its transfer decision, the Court does not reach the merits of Liberty's alternative requests to dismiss the complaint or transfer pursuant to Section 1406. *See Vanda Pharm., Inc. v. Teva Pharma., Inc.*, 2023 WL 8890322, at *1 n.1 (D.N.J. Dec. 26, 2023) (ruling on Section 1404(a) transfer and not reaching alternative Rule 12 motion); *LifeCell Corp. v. Lifenet Health*, 2016 WL 54489, at *1 n.1

(D.N.J. Feb. 9, 2016) (same), *aff'd* 2016 WL 3545752 (D.N.J. June 28, 2016).[1]

## I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a resident of Bergen County, New Jersey. (Compl., pp. 1-2; ECF No. 1-1, Ex. A). Liberty is a private university incorporated in Virginia with its principal place of business located in Lynchburg, Virginia. (Declaration of Scott Hicks ("Hicks Decl.") ¶ 3; ECF No. 14-1).[2] Liberty offers online courses at the undergraduate, graduate, and post graduate levels in all fifty (50) states and in many countries around the world. (Hicks Decl., ¶ 10). The Complaint alleges that Plaintiff enrolled as a student at Liberty in or about 2019 as a Ph.D. candidate, but that she has not been permitted to graduate despite "fulfilling all necessary academic requirements to qualify for graduation." (Compl., ¶¶ 1-2, 4).

On or about December 3, 2024, Plaintiff filed her Complaint in New Jersey Superior Court, alleging discrimination by Liberty in that she did not get appropriate guidance from the faculty at Liberty and was forced to comply with faculty imposed educational requirements, and further alleges that she was retaliated against by Liberty's Provost, Dean, and other faculty members in several ways, including by having the police visit her home. (*See generally* Compl., ECF No. 1, Ex. A). The Complaint alleges generally that Liberty's conduct violated Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, *et seq.*, Title IX of the Civil Rights Act, 20 U.S.C. § 1681, *et seq.*, and the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, *et seq.* through

---

[1] The Third Circuit has "endorsed the view that district courts have discretion to address convenience-based venue issues in the first instance and that they should suspend concerns about other threshold issues while doing so." *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 95 (3d Cir. 2018) (citing *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 404 n.8 (3d Cir. 2017) ("assuming the court intends to handle the § 1404(a) transfer issues first, the court should suspend concerns about other threshold issues such as subject-matter jurisdiction, personal jurisdiction, improper venue, or misjoinder, as it has discretion to address convenience-based venue issues first….") (citation omitted))). Further, the Third Circuit has held that the transferor court need not have personal jurisdiction over a defendant to transfer an action under Section 1404(a). *See United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir. 1964); *see also Schwartz v. Planalytics, Inc.*, 2017 WL 2812878, at *3 (D.N.J. June 29, 2017) (discussing same).

[2] Mr. Hicks is the Provost and Chief Academic Officer of Liberty. (Hicks Decl., ¶ 1).


the following five counts: (1) "Education Fraud"; (2) "Loss of Earnings"; (3) "Hostile Educational Environment"; (4) "Retaliation, Biasness, and Retaliation"; and (5) "Violation of University Policies." (*See* Compl., pp. 12-13).

On January 13, 2025, Liberty removed the case to this Court, alleging both federal diversity jurisdiction, pursuant to 28 U.S.C. § 1332, and federal question jurisdiction, pursuant to 28 U.S.C. § 1331. (*See* Notice of Removal ("NOR") ¶¶ 5-12).

On February 17, 2025, Defendant filed the present motion seeking dismissal or transfer on multiple grounds. (ECF No. 14). As it relates to transfer, Liberty contends that Plaintiff executed several agreements, described as "financial check-in contracts," in connection with her enrollment and which govern the parties' relationship. (Hicks Decl., ¶ 14). As it relates to the instant motion, Liberty supplies Plaintiff's alleged contracts for the Fall 2023, Summer 2024, and Fall 2024 semesters, each of which contain the following forum selection clause:

> Any dispute, claim, or action arising out of or relating in any way to this Agreement or the relationship between Liberty and me must be brought exclusively in a state or federal court located in Lynchburg, Virginia and I expressly consent to the jurisdiction of the state and federal courts of Lynchburg, Virginia, waiving any claim or defense that such forum is not convenient or proper.

(Hicks Decl., ¶¶ 14-17 & Exs. A-C, "the forum selection clause," ECF No. 14-2).

Liberty seeks to transfer this case to the United States District Court for the Western District of Virginia based on the forum selection clause in the contracts. (ECF No. 14 at 12-13).[3] Liberty contends that the forum selection clause compels transfer pursuant to the Supreme Court's

---

[3] Liberty has moved for transfer pursuant to Section 1404 and Section 1406. (*See* ECF No. 14-6 at 12-14). The Third Circuit has explained that "[s]ection 1404(a) provides for the transfer of a case where both the original and the requested venue are proper," and that "[s]ection 1406, on the other hand, applies where the original venue is improper and provides for either transfer or dismissal of the case." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995). As previously stated, this Court has opted to address the Section 1404(a) convenience-based transfer issues first, and thus, need not reach the Section 1406 improper venue issues. *See In re Howmedica*, 867 F.3d at 404 n.8; *see also Rosenberg v. Garmin Int'l, Inc.*, 2024 WL 3287979, at *1 n.1 (D.N.J. July 3, 2024) (declining to resolve venue dispute and addressing transfer under Section 1404(a)).

decision in *Atlantic Marine Const. Co. v. U.S. Dist. Ct. for the W.D. of Tex.*, 134 S. Ct. 568 (2013), because the clause is valid and enforceable; covers Plaintiff's claims; and because the public interest considerations weigh in favor of transfer to the Western District of Virginia. (ECF No. 14 at 13-14). In the event the forum selection clause does not control, Liberty contends that the relevant transfer considerations still favor transfer to the Western District of Virginia. (*Id*. at 2-3, 14 & n.4).

In opposition, as it relates to transfer, Plaintiff "denies signing or agreeing to Defendant's Exhibit A, Exhibit B, and Exhibit C," which contain the forum selection clause, and contends that the "document[] is a false representation of a contract between Plaintiff and Defendant." (ECF No. 16 at 2). Plaintiff further contends that "[n]o such document exists, and Plaintiff has never agreed to or signed any such document," and that the documents containing the forum selection clause are "false, misleading, and forged document[s] that represents a false agreement." (ECF No. 16 at 5). Other than disputing the validity of the forum selection clause and the agreements, Plaintiff's opposition does not specifically address the factors that generally apply to a transfer analysis.

On reply, Liberty contends that Plaintiff's lack of substantive opposition warrants dismissal and/or transfer. (ECF No. 18 at 2-3). Further, Liberty reiterates that the undisputed facts and the relevant factors support transfer to Virginia. (*Id.* at 3).

## II.    LEGAL STANDARD

### A.    Section 1404(a)

Section 1404(a) confers federal courts with authority to transfer a case to another district "where it may have been brought," when doing so is "in the interest of justice" and serves "the convenience of parties and witnesses." 28 U.S.C. § 1404(a). The movant bears the burden of

4

establishing that transfer is appropriate. *Jumara*, 55 F.3d at 879. Section 1404(a) "is [intended] 'to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Kremer v. Lysich*, 2019 WL 3423434, at *3 (D.N.J. July 30, 2019) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)); *see also Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973). Thus, the statute vests district courts "with . . . large discretion," *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1045 (3d Cir. 1973), "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622).

The moving party must establish "both the propriety of venue in the transferee district and jurisdiction over all of the defendants." *LG Elecs. Inc. v. First Int'l Computer*, 138 F. Supp. 2d 574, 586 (D.N.J. 2001) (citation omitted). Once the court determines that jurisdiction and venue would be proper in the transferee district, the court must balance private and public interest factors identified in *Jumara* to determine whether the litigation would more conveniently proceed, and the interests of justice would be better served, by a transfer. *See Jumara*, 55 F.3d at 879.

The first category of factors considers the private interests of the litigants and include: (1) "plaintiff's forum preference;" (2) "defendant's preference;" (3) "whether the claim arose elsewhere;" (4) "the convenience to the parties as indicated by their relative physical and financial condition;" (5) "the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;" and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id*.

The second category of factors consider the public's interests and include:
(1) "the enforceability of the judgment;" (2) "practical considerations that could make the trial

5

easy, expeditious or inexpensive;" (3) "the relative administrative difficulty in the two for a resulting from court congestion;" (4) "the local interest in deciding local controversies at home;" (5) "the public policies of the fora;" and (6) "the familiarity of the trial judge with applicable state law in diversity cases." *Id*. at 870-880 (internal citations omitted).

A Section 1404(a) analysis must always remain flexible and depend on the unique facts of the case. *See Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 450 (D.N.J. 1999) (citing *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43 (3d Cir. 1988)). While the moving party bears the burden to justify a transfer, it is "not required to show truly compelling circumstances for ... [change of venue, but rather that] all relevant things considered, the case would be better off transferred to another district." *Dawson v. General Motors LLC*, 2020 WL 953713, at *2 (D.N.J. Feb. 24, 2020) (quotations omitted).

### B.      The Forum Selection Clause

When "a forum selection provision enters the picture," "the weighing of the private and public interests under Section 1404 change," and the forum selection provision becomes an important consideration. *In re Howmedica*, 867 F.3d at 402. Pursuant to *Atlantic Marine*, the presence of a valid forum selection clause changes a Section 1404(a) transfer analysis in the following ways:

> [i] the plaintiff's choice of forum becomes immaterial;
> [ii] the parties' private interests—traditional transfer considerations—should not be evaluated, and should be deemed to weigh entirely in favor of the selected forum; and
> [iii] the original venue's choice of law rules do not apply.

*ADP v. Bakshi*, 2016 WL 1223557, at *3 (D.N.J. Mar. 29, 2016) (citing *Atl. Marine*, 134 S. Ct. at 581-82).

As the Supreme Court explained in *Atlantic Marine*, the presence of a valid forum

6

selection provision should, "in all but the most unusual cases," result in the case proceeding in the designated forum. *Id.* at 581.

## III. DISCUSSION

This Court must first determine whether this action could have been brought in the transferee court, the Western District of Virginia. The answer is yes. A district is one in which an action "might have been brought" if that district has (1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the defendant; and (3) is a proper venue. *See Yang v. Odom*, 409 F. Supp. 2d 599, 604 (D.N.J. 2006). Here, the Court finds the requirements are satisfied, as Liberty concedes it is subject to personal jurisdiction in the Western District of Virginia and that venue is proper based on Liberty's activities in Virginia. Finally, subject matter jurisdiction is not in dispute.

The Court next must decide whether the forum selection clause should be enforced in this case, as it bears on the scope of the transfer analysis.

Under federal law, forum selection clauses are presumptively valid and enforceable, 'unless enforcement is shown by the resisting party to be unreasonable under the circumstances.'" *Maaco Franchising, Inc. v. Tainter*, 2013 WL 2475566, at *3–5 (E.D. Pa. June 10, 2013) (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972)); *see Gen. Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 356 (3d Cir. 1986) (a forum selection clause is "prima facie valid"). Plaintiff disputes that she executed the agreements containing the forum selection clauses. (ECF No. 16 at 1-5). Yet, her Complaint alleges that she pursued her degree with Liberty, completed all necessary requirements, including presumably financial requirements set forth in the allegedly forged financial agreements, and has improperly been denied the right to graduate. (*See* Compl., ¶ 2).

7

In *Rogalski v. Laureate Education, Inc.*, 2022 WL 19410319 (D.N.J. Sep. 30, 2022), the court was faced with a similar dispute. There, the *pro se* plaintiff objected, like Plaintiff here, to a forum selection clause in a student agreement with an online university on the grounds that he allegedly did not sign the agreement. *Id.* at *2. According to the plaintiff, "because he did not sign the [s]tudent [a]greement, he is not bound by the forum selection clause." *Id.* at *6. The Court disagreed and applied general New Jersey contract law to determine that the plaintiff's actions in pursuing a degree and relationship with the school demonstrated assent to the agreement. *Id.* As the *Rogalski* court stated, "[t]he [c]omplaint alleges [p]laintiff is entitled to his degree, which he pursued and ostensibly earned by achieving the requisite credits and grades, an endeavor he transacted despite never returning an executed [s]tudent [a]greement. His actions in pursuing the degree and relationship with [the university] . . . evince assent." *Id.* Based on that assent, the *Rogalski* court found the forum selection clause enforceable despite the plaintiff's allegation that he did not sign the agreement. *Id.* at *6-7.

Likewise here, Plaintiff's course of conduct, as detailed in her Complaint, suggests that she accepted the terms and conditions of Liberty's agreements, including the forum selection clause, as she has pursued her degree with Liberty and contends she is entitled to graduate. *See id.* at *6 ("Assent is established where the evidence demonstrates 'unqualified acceptance,' which can be express or implied by conduct." (internal citations omitted)). Indeed, she insists she is entitled to her degree, which presumes she complied with her financial obligations to Liberty set forth in the agreements containing the forum selection clause. Thus, a strong argument could be made that the forum selection clause is valid and enforceable, and that the private interest factors should not be considered and would weigh reflexively in favor of transfer. *See Atl. Marine*, 134 S. Ct. at 581-82.

However, in this Court's view, Liberty does not sufficiently address, let alone refute, Plaintiff's argument that she did not sign the contracts containing the forum selection clause. Thus, the Court is not able to definitively determine the validity of the forum selection clause based on the record presented. But that does not end the transfer analysis, as Liberty contends that a Section 1404(a) transfer is warranted if the private interest factors are considered even if the forum selection clause is not. (*See* ECF No. 14 at 13-14 & n.4; ECF No. 18 at 3). This Court agrees.

### The *Jumara* Factors

The first private interest factor is the plaintiff's choice of forum. *See Jumara*, 55 F.3d at 877. Generally, a plaintiff's choice of forum, as manifested by where the suit was brought, receives deference and is not lightly disturbed. *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 197–98 (E.D. Pa. 2008). However, a plaintiff's choice of forum is given "little weight if the choice of forum has little connection with the operative facts." *Culp v. NFL Prods. LLC*, 2014 WL 4828189, at *4 (D.N.J. Sept. 29, 2014). Plaintiff is a resident of New Jersey. However, as explained below, Plaintiff's discrimination and retaliation based claims arose in Virginia. Accordingly, this factor is, at best, neutral. *See Jones v. Liberty University*, 2016 WL 8261734, at *1 (N.D. Fla. Mar. 29, 2016), *adopted by* 2016 WL 8261735 (N.D. Fla. Apr. 18, 2016) (recommending transfer of the *pro se* plaintiff's discrimination case against Liberty to the Western District of Virginia, despite the plaintiff residing in the district in which the case was filed).

The Court finds that the second and third private factors, defendant's forum choice and where the claim arose, weigh in favor of transfer. Liberty prefers the Western District of Virginia, where it is located. Considering where the claims arose, Plaintiff alleges discrimination,

9

retaliation, and related misconduct arising primarily out of her interactions and disagreements with Liberty's Virginia-based faculty members over several years, as detailed at length in her Complaint. (*See* Compl., ¶¶ 10-28). In the transfer context, various courts within and outside of this district have found that discrimination-based claims generally arise where the alleged discriminatory conduct occurred. *See Jones*, 2016 WL 8261734, at *1 (discrimination claim against Liberty arose where University was located); *see also Zangara v. Nat'l Bd. of Med. Exam.*, 2023 WL 6533467, at *5, 7 (D.N.J. Oct. 6, 2023) (Title VII claim alleging discrimination in exam scoring arose where exams were graded); *Smith v. Wyndham Vac. Ownership, Inc.*, 2017 WL 548943, at *1 (D.N.J. Feb. 10, 2017) (Title VII claims arose where alleged discrimination occurred). This Court adopts this approach, and thus, here, finds most of Plaintiff's claims arose in the Western District of Virginia. *See Jones*, 2016 WL 8261734, at *1.

The Court must also consider the convenience of the parties and the witnesses, the fourth and fifth *Jumara* factors. As it relates to the convenience of the parties, courts look to "the relative physical and financial conditions of [the] parties." *Goldstein v. MGM Grand Hotel & Casino*, 2015 WL 9918414, at *3 (D.N.J. Nov. 4, 2015). Plaintiff resides in New Jersey, and therefore, the Court understands it would be more convenient for her to litigate in her home state. At the same time, however, Plaintiff offers no specific inconvenience or financial impediment that would preclude her from litigating in Virginia. *See Denmark v. Pilot Travel Centers, LLC*, 2019 WL 2353644, at *5 (D.N.J. June 4, 2019) (noting factor was neutral when, among other things, plaintiffs did not establish financial incapability). While it appears that Liberty is likely better positioned to absorb the general costs of litigation than the individual Plaintiff, that remains the case whether the case proceeds in New Jersey or Virginia. On balance, the fourth *Jumara* factor is neutral.

The fifth factor, the convenience of the witnesses, weighs strongly in favor of transfer. The convenience of witnesses "is a particularly significant factor in a court's decision whether to transfer." *Coppola*, 250 F.R.D. at 199. "There are many different types of witnesses ... and each one carries a different weight." *Id*. For example, "fact witnesses who possess firsthand knowledge of the events giving rise to the lawsuit have traditionally weighed quite heavily in the balance of convenience analysis." *Id*. On the other hand, the location of expert witnesses is not particularly relevant in the transfer analysis, as they would not be expected to testify as to liability issues, but instead provide damages related testimony. *See, e.g., Goldstein*, 2015 WL 9918414, at *4.

Here, Liberty has identified, by sworn declaration, that "most of the witnesses and relevant documents to Plaintiff's" claims are in Virginia. (*See* Hicks Decl., ¶ 23). Further, Liberty contends it would be "extremely difficult and burdensome" to send its faculty, staff, and administration to New Jersey for depositions, hearings, and/or a trial. (*Id.*, ¶ 24). In contrast, neither side has identified any potential witnesses in New Jersey. Stated different, "[m]any of underlying alleged events occurred at [Liberty], within the Western District of Virginia; all of the defendants are located within that judicial district; and it is reasonable to expect that relevant documents and witnesses would also be located in that judicial district. Thus, the Western District of Virginia appears to be a more appropriate forum for this action." *Lawtone-Bowles v. Liberty Univ.*, 2022 WL 7164241, at *2 (S.D.N.Y. Sept. 23, 2022) (transferring *pro se* complaint against Liberty to Western District of Virginia). Accordingly, on balance, the fifth *Jumara* factor supports transfer.

Finally, the sixth private factor, the location of books and records, favors transfer. As Liberty has attested to in a declaration, the records relating to Plaintiff's enrollment and her years

11

of coursework are in Virginia. *See Lawtone-Bowles*, 2022 WL 7164241, at *2.

Turning to the public interest factors, this Court finds these factors either support transfer or are neutral. The first public factor, enforceability of the judgment, is neutral here as a judgment entered in either forum—New Jersey or Virginia—could be enforced. *Coppola*, 250 F.R.D. at 200.

The second factor is "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara,* 55 F.3d at 879. Again, the crux of this dispute involves coursework and graduation from a Virginia-based university where most of the witnesses and documents are located. Thus, this factor weighs in favor of transfer. *See Lawtone-Bowles*, 2022 WL 7164241, at *2.

The third public factor is the relative administrative difficulty resulting from court congestion. Neither party addresses this factor. However, the Court takes judicial notice of statistics published by the Administrative Office of the United States Courts,[4] which reflect that New Jersey is an extremely busy district. For example, for the twelve-month period ending March 31, 2025, there were 11,546 new civil actions filed in the District of New Jersey, whereas there were 1,379 new civil actions filed in the Western District of Virginia.[5] Therefore, New Jersey is a more congested district than the Western District of Virginia. This factor supports transfer.

The fourth public interest factor is the local interest in deciding local controversies at home. This factor asks, "which of the two potential districts maintains a greater interest in the action." *Coppola*, 250 F.R.D. at 200. Typically, the district in which "a substantial amount of

---

[4] The Court may take judicial notice of statistics published on the official United States Courts website available at http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/09/30-1. *See U.S. v. H&R Block, Inc.*, 789 F. Supp. 2d 74, 84 & n.4 (D.D.C. 2011).

[5] *See* https://www.uscourts.gov/data-news/data-tables/2025/03/31/federal-judicial-caseload-statistics/c-3

12

the alleged culpable conduct occurred ... favors retaining jurisdiction as a matter of local interest." *Id.* at 201. Here, as this Court has already determined, Virginia is the district where most of the alleged discriminatory and retaliatory conduct occurred, and therefore, the fourth public factor weighs in favor of transfer. *See Lawtone-Bowles*, 2022 WL 7164241, at *2.

Finally, jury duty, a public interest consideration, should not be imposed on the citizens of New Jersey when nearly all of the events giving rise to the claim occurred outside the state. *See Rubes v. Kohl's*, 2017 WL 4167457, at *2 (D.N.J. Sept. 19, 2017) (holding that the public policies of the fora weigh in favor of transfer because people in New Jersey should not be burdened with a jury duty regarding conduct that occurred almost exclusively outside New Jersey).

After considering both the private and public interest factors under the Third Circuit's framework in *Jumara*, the Court concludes, on balance, that the relevant factors support transfer. Accordingly, this case should be transferred to the Western District of Virginia, pursuant to Section 1404(a).

### IV.   CONCLUSION

For the foregoing reasons, the Court transfers this case to the United States District Court for the Western District of Virginia, pursuant to 28 U.S.C. § 1404(a). The Clerk shall not transfer this case for fourteen (14) days. *See* L. Civ. R. 72. 1(c)(1)(C). An appropriate order will be entered.

<div style="text-align: right;">
s/Jessica S. Allen  
**HON. JESSICA S. ALLEN**  
**United States Magistrate Judge**
</div>

Dated: July 18, 2025

cc: Hon. Susan D. Wigenton, U.S.D.J.