CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
2/24/2026
LAURA A. AUSTIN, CLERK
BY: s/ C. Amos
    DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | |
|---|---|
| GAIL FUNG,<br><br>*Plaintiff,*<br><br>v.<br><br>LIBERTY UNIVERSITY,<br><br>*Defendant.* | CASE NO. 6:25-CV-00058<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Defendant Liberty University ("Liberty") moves the Court to dismiss Plaintiff Fung's complaint with prejudice in this Title VI and Title IX lawsuit. Dkt. 31. Fung, proceeding *pro se*, raises several causes of action: (i) "education fraud;" (ii) "loss of earnings;" (iii) "hostile educational environment;" (iv) "retaliation, biasness, (sic) and retaliation;" and (v) "violation of university policies." Dkt. 1-1 at 12-13. The Court will grant Liberty's motion but will dismiss Counts III and IV without prejudice. The Court will likewise dismiss Fung's pending motion for summary judgment as moot. Dkt. 29.

### BACKGROUND

Gail Fung, a "mixed Asian, Latina, [and] African American" "student with a disability" "has diligently pursued a doctoral online degree at Liberty University" since 2019 "while living in her home state of New Jersey." Dkt. 1-1 ¶¶ 1, 5, 6. Fung pursued a PhD in education law and intended to write a dissertation that "focus[ed] on the lived experiences of African American and Latino students utilizing the framework and methodology of critical race theory (CRT)." *Id.* ¶ 4. Fung "discover[ed] [CRT] from a peer who wrote her dissertation on the lived experiences of

Case 6:25-cv-00058-NKM-CKM    Document 48    Filed 02/24/26    Page 2 of 11
Pageid#: 128

minority K-12 education (sic)." *Id.* ¶ 6. This peer, who Fung alleges is "Caucasian," "was a member of [Fung's] class and worked with [Fung] on several research assignments." *Id.*

Despite the peer's successful dissertation, Fung's advisor and "former professor Dr. Wheeler . . . threatened to fail [her] if [she] did not change [her] theoretical framework." Dkt. 1-1 ¶ 5. When she refused, Wheeler "used his power to fail [Fung]" and made "sexist remarks referring with disdain to [Fung's] name and disguise of being a 'Black' female rather than an 'Asian' female, which [Fung's] name represents." *Id.* ¶ 7; Dkt. 38 at 2. Fung alleges she "filed a complaint with the office of equity and inclusion . . . regarding the discrimination [she] was facing and retaliation" which Liberty "took nearly a year to review." *Id.* While her complaint was pending, Fung "was forced to retake the [dissertation] course and pay additional tuition fees." *Id.*

Fung also alleges that, "on June 7, 2021,"[1] her home in New Jersey was "swatted with police officers [she] did not recognize." Dkt. 1-1 ¶ 8; Dkt. 38 at 2. When reporting this to the "New Milford Police Department," she alleges speaking with New Milford four different times and being told "the swatting was initiated by Liberty University." Dkt. 1-1 ¶ 8; Dkt. 38 at 2.

After the issues with Wheeler, Fung alleges being "assigned Dr. Antoinette Stroter as her professor for the identical retake of the research dissertation course," and that "she passed the course with an A." Dkt. 1-1 ¶ 10. Fung alleges "complet[ing] [her] dissertation and pass[ing] all three dissertation courses which is what is required for graduation." *Id.*

However, Fung also alleges Stroter "lacked expertise to guide [Fung] through the dissertation process;" therefore, she was reassigned to "Dr. Rachel Hernandez" who was "unavailable due to personal obligations." Dkt. 1-1 ¶¶ 10, 12. She was then reassigned to "Dr.

---

[1]   Fung introduces additional facts, such as this one, in her opposition to Liberty's motion to dismiss. Dkt. 38 at 2. Due to the Court's obligation to construe her filings liberally, as she is proceeding *pro se*, the Court will accept these additional facts as part of the complaint.

Quindang, who openly expressed her disdain for critical theory" and who allegedly told Fung "she would not only fail [her] but that [Fung] would not win any . . . claims against her because she was very good friends with those in 'power.'" *Id.* ¶ 13.

"In early 2024," Fung was "matched . . . with a new dissertation chair" "Dr. Alicia Castaneda," who was "extremely hostile" during their first meeting; who "does not hold the minimum degree to be a PhD;" and who, "in 15 weeks of class" "ha[d] not provided adequate guidance or support for [Fung's] dissertation." *Id.* ¶¶ 17-19. According to Fung, Castaneda also later "ordered a [second] swatting" on her home. Dkt. 38 at 3.

Fung alleges her dissertation was "ready for university delivery in 2022," but that she has been consistently "denied graduation without explanation," forcing her to incur "almost an additional $19,635.00 plus 7.7% interest since 2022." Dkt. 1-1 ¶¶ 19, 21, 23. Fung has allegedly "submitted over 14 Beacon reports" "illustrating discrimination and harassment due to her gender and ethnic identity" with Liberty's Title IX office; however, officers "failed to conduct thorough investigations" for all her reports. Dkt. 38 at 2-3. Fung also alleges contacting Liberty's "Provost," "Dean for online education," and "Ombudsman" about her concerns, but she did not receive any responses. Dkt. 1-1 ¶¶ 25-27. Fung asserts these failures "reflect a persistent and ongoing problem, falling under the continuing violation framework" that require an "immediate injunction to compel [Liberty] to allow [Fung] to graduate" as well as other various forms of relief. Dkt. 38 at 3; Dkt. 1-1 at 11.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v.*

3

*Twombly*, 550 U.S. 544, 555 (2007). At this stage of the litigation, all allegations in a complaint must be taken as true and all reasonable inferences must be drawn in the plaintiff's favor. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

Rule 12(b)(6) does not require "heightened fact pleading;" however, a complaint must state "more than labels and conclusions" as a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (providing that "only a complaint that states a plausible claim for relief survives a motion to dismiss").

A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (quotation marks omitted). Additionally, a court must construe the filings of *pro se* plaintiffs liberally, and *pro se* complaints "however inartfully pleaded, must be held to less stringent standards" than those prepared by counsel. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## ARGUMENT

### A. No Cognizable Causes of Action Exist for Counts I, II and V

1. *"Education fraud" is not a cause of action*

Fung styles Count I as "education fraud," asserting that she "has fulfilled all the requirements" yet has been "denied graduation." Dkt. 1-1 at 12. Fung also argues Liberty is liable for education fraud because her "dissertation chair instructor" "Dr. Castaneda, EdD. Does (sic) not hold the required minimum degree to be a PhD." *Id.* at 12.

The Court construes this claim as, at bottom, an educational malpractice claim. However, "the federal and state courts that have considered . . . educational malpractice claims . . . have unanimously declined to recognize them as valid causes of action." *See Sellers v. Sch. Bd. of the*

4

*City of Manassas*, 960 F. Supp. 1006, 1012 (E.D. Va. 1997), *aff'd*, 141 F.3d 524 (4th Cir. 1998).[2] As such, no cause of action exists, the Court will dismiss Count I with prejudice because additional amendment would be futile.[3]

2. *"Lost earnings" is a remedy, not a cause of action*

Fung styles Count II as "lost earnings," asserting that Liberty's "hostile, retaliative, and bias (sic) actions" delayed her graduation and caused her to lose "potential earnings of $360,000 in the education law field." Dkt. 1-1 at 12.[4].

In Virginia, lost wages/earnings may be asserted as damages for a personal injury claim; however, no independent lost wages/earnings cause of action exists. *Neathery v. Maritime Overseas Corp.*, 1982 WL 195526, at *1 (E.D. Va. Jan. 12, 1982) ("We decline, accordingly, to recognize a non-statutory cause of action for recovery of wages."), *rev'd on other grounds*, 700 F.2d 140 (4th Cir. 1983). Therefore, Count II must also be dismissed with prejudice as it is not tied to a cognizable cause of action, and amendment would be futile.

3. *"Violation of university policies" is not a cause of action*

---

[2] Even if Count I is more aptly construed as a civil fraud claim, Fung still fails to allege sufficient facts to survive a motion to dismiss. Under Virginia law, a party alleging fraud must allege: "(1) a false representation, (2) of a present, material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reasonable reliance by the party misled, and (6) resulting damage to him." *See Thompson v. Bacon*, 245 Va. 107, 111 (1993). However, Fung fails to allege sufficient facts to pass even the first element of this test—her complaint merely alleges "Liberty failed to adhere to its established graduation policies," without establishing what those policies are or what "false representations" Liberty made regarding her graduation. Dkt. 38 at 1. And further, Fung's complaint is silent as to the "false representations" Liberty made about the degrees that dissertation chairs must have in order to work in their positions.

[3] The Court finds that Fung's cited case, *Friedman v. Southern New Hampshire University*, 104 A.D. 3d 617 (N.Y. App. Div. 2013) does not exist, nor does it provide support for the assertion that students may bring claims of education fraud against their schools and universities. The Court addresses Liberty's request for sanctions related to Fung's inclusion of this case in the conclusion of this memorandum opinion.

[4] She relies on *Hoffman v. Board of Education* in making this argument—a case which, even construed liberally—does not address "the impact of educational institutions' actions on students' career prospects." Dkt. 38 at 2; 400 N.E.2d 121 (N.Y. Ct. App. 1979). *Hoffman* concerned a student's placement in special education for intellectually disabled children, where he remained improperly for "over ten years." *Id.* at 123-24. The Court denied his parents the right to challenge his placement. *Id.* at 127.

5

Fung styles Count V as "violation of university policies," asserting that Liberty "breached its own established policies and guidelines," though without specifying the policies and guidelines that have been violated. Dkt. 1-1 at 13.[5]

Presumably, Fung alleges a "violation of university policies" cause of action because she considers Liberty to be contractually bound to its own policies. However, courts have rejected this breach of contract theory, as school policies lack a showing of the parties' mutual intent to be bound. *See, e.g.*, *Tibbetts v. Yale Corp.,* 47 Fed. Appx. 648, 656 (4th Cir. 2002) (unpublished) (concluding that provisions of the Yale Student Handbook were "not a contract, but merely a university policy promoting free expression") *Guiliani v. Duke Univ.*, 2010 WL 1292321, at *8 (M.D.N.C. Mar. 30, 2010) (dismissing breach of contract claim premised on Duke's student handbooks and policy manuals that were not alleged to have been incorporated into an enforceable contract between the plaintiff and Duke). As such, Count V fails and will be dismissed with prejudice as amendment would be futile.

### B. Fung Fails to Allege Sufficient Facts to Allege Title VI and IX Violations[6]

*1. Fung's Title VI and IX Complaints are Not Time-Barred*

Liberty argues Counts III and IV are time-barred as Fung did not file her action within two years of the claims' accrual. Dkt. 32 at 11. The Court disagrees.

---

[5] Fung also asserts Liberty's "refusal to communicate with [her] . . . violates Title IV" and that Liberty's "failure to provide [her] with a reasonable accommodation . . . violates . . . the ADA Act." *Id.* Fung fails to state a claim for discrimination under Title IV or the Americans with Disabilities Act (ADA). First, Title IV does not contain a private right of action; does not apply to private educational institutions, such as Liberty; and concerns school desegregation. 42 U.S.C. § 2000c, *et seq*. Second, Liberty is exempt from the ADA's requirements as a "religious organization." 42 U.S.C. § 12187.

[6] The Court interprets Count IV, for "retaliation, biasness, and retaliation" as raising race and sex discrimination and retaliation claims under Title VI and IX of the Civil Rights Act and will analyze them accordingly. As the Title VII standard applies to each of these statutory causes of action, the Court analyzes them together.

Virginia applies a two-year statute of limitations to both Title VI and IX claims; unless a claim is brought within two years of the cause of action accruing, it is time-barred. *See Reid v. James Madison Univ.*, 90 F.4th 311, 317-18 (4th Cir. 2024) (Title IX); *Smith v. Virginia Housing Dev. Auth.*, 437 F. Supp. 3d 486, 505 (E.D. Va. 2020) (Title VI). Claims accrue when a plaintiff has a "complete and present cause of action," meaning when a "plaintiff possesses sufficient facts about the harm done to [her] that reasonable inquiry will reveal [her] cause of action." *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Nasim v. Warden, Maryland House of Corrections*, 64 F.3d 951, 955 (4th Cir. 1995).

Liberty argues Fung's claims accrued "in 2021;" however, it does not argue *why* her claims accrued then. Dkt. 32 at 11. According to her complaint, Fung began her PhD at Liberty "in 2019," and first began working with Wheeler for an unknown amount of time. Dkt. 1-1 ¶¶ 4-5. "In 2021," Wheeler failed Fung. *Id.* ¶ 10. Fung's dissertation was "ready for university delivery in 2022," and since then, she has been "denied graduation without explanation." Dkt. 1-1 ¶¶ 19, 21, 23. Fung does not specify *when* in 2022 she suffered these injuries. Since Fung is proceeding *pro se*, the Court construes her allegations broadly, and finds her claim accrued December 31, 2024, two years after the end of 2022. Thus, for purposes of this motion to dismiss, Fung's claims are not time-barred.

2. *Fung Fails to Allege Sufficient Facts to State a Hostile Educational Environment Claim in Count III*

To state a claim for hostile educational environment, a plaintiff must allege "(1) she was a student at an educational institution receiving federal funds, (2) she was subjected to harassment based on her sex [or race], (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution." *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 695 (4th Cir.

7

2007). Under this standard, harassment occurs when the plaintiff is subjected to sex or race-specific language that is aimed to humiliate, ridicule, or intimidate. *See Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331-32 (4th Cir. 2003). Harassment is "severe or pervasive" when it creates "an environment that a reasonable person would find hostile or abusive." *Harris v. Forklift Sys., Inc.*, 51 U.S. 17, 21 (1993).

Wheeler's "sexist remarks," his comments about his "disdain with [Fung's] name and disguise of really being a 'Black' female," and his decision to fail Fung "aimed to humiliate, ridicule, or intimidate" her, and are thus racial and sexual harassment. Dkt. 38 at 3; *Ocheltree*, 335 F.3d at 331-32. However, without additional facts about the comments' frequency, the Court cannot conclude they created "an environment that a reasonable person would find hostile or abusive;" Fung has failed to allege facts demonstrating the harassment she faced was severe or pervasive. *Harris*, 51 U.S. at 21.[7] However, because additional facts may allow this claim to proceed, the Court will dismiss Count III without prejudice.

3. *Fung Fails to Allege Sufficient Facts to State a Discrimination Claim in Count IV*

To state a discrimination claim under Title VI or IX, "a plaintiff must plead sufficient facts supporting (1) the defendant is a recipient of federal financial assistance; and (2) the defendant intentionally discriminated against plaintiff on the basis of race, [sex,] color, or national origin." *Lucas v. VHC Health*, 128 F.4th 213, 221 (4th Cir. 2025).

Plaintiffs can allege discrimination through disparate treatment if a plaintiff alleges they were: (i) treated differently from a peer who was not a member of a protected class, and (ii) that "the defendant had a discriminatory intent or motion for taking a job-related action" against them. *Smith v. Virginia Hous, Dev. Auth.*, 437 F. Supp. 3d 486, 506 (E.D. Va. 2020) (citing *Ricci v.*

---

[7] Fung alleges no facts that demonstrate the later "swattings" or her additional difficulties with other dissertation chairs were motivated by her sex or race. *Id.* ¶ 8; Dkt. 38 at 3.

*DeStefano*, 557 U.S. 557, 577 (2009)). Plaintiffs can allege discrimination through derogatory comments if a plaintiff alleges they are "(1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained-of adverse [] decision; (3) made by an individual with authority over the [] decision at issue; and (4) related to the [] decision at issue." *Bandy v. City of Salem*, 59 F.4th 705, 711 (4th Cir. 2023).

Fung, a member of a "protected class" because of her race and gender, alleges Wheeler failed her, because of her dissertation's "theoretical framework" of CRT. Dkt. 1-1 ¶ 5. She alleges a white female peer was permitted to use CRT in her dissertation and was not failed. *Id.* ¶ 6. Yet, Fung does not allege her peer's dissertation chair was Wheeler, that her peer graduated on time, or that her peer attended Liberty. Thus, Fung does not allege sufficient facts to establish discrimination through disparate treatment.

Fung also alleges Wheeler made "sexist remarks" and "refer[red] to his disdain with [Fung's] name and disguise of really being a 'Black' female rather than an 'Asian female' which [her] name represents." Dkt. 38 at 2. However, Fung fails to allege these comments were "proximate in time" to Wheeler's decision to fail her. *Bandy*, 59 F.4th at 711. As such, Fung does not allege sufficient facts to establish discrimination through derogatory facts. However, as amendment may not be futile for this claim, the Court will dismiss it without prejudice.

4. *Fung Fails to Allege Sufficient Facts to State Retaliation Claim in Count IV*

To state a retaliation claim under both Title VI and Title IX, a plaintiff must allege (1) they "engaged in protected activity;" and (2) because of this, they "suffered an adverse action attributable to the defendant educational institution." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 694 (4th Cir. 2018); *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Protected activity" includes "actions taken to oppose [race or] sex discrimination, such as

9

reporting . . . harassment." *Kessinger v. W. Virginia State Univ.*, 2026 WL 324485, at *10 (S.D. W.Va. Feb. 6, 2026) (citing *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 180 (2005)).

Fung alleges she made "14 reports of discriminatory practices to the Title IX office" as well as reports to the "Provost;" "Dean of online education;" and "Ombudsman" at Liberty; therefore, she has alleged facts sufficient to establish protected activity. Dkt. 38 at 2; Dkt. 1-1 ¶¶ 7, 25-27. And because "a reasonable [student]" would be dissuaded "from making . . . a discrimination [claim]" by receiving a failing grade and by being denied graduation,[8] Fung has alleged sufficient facts to establish adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); Dkt. 1-1¶¶ 7-8, 23.

Next, Fung must allege causation by either "showing that the adverse act bears sufficient temporal proximity to the protected activity," or by alleging "facts that suggest the adverse action occurred because of the protected activity." *See Smith v. CSRA*, 12 F.4th 396, 417 (4th Cir. 2021) (discussing framework in Rehabilitation Act context). Courts find causation through temporal proximity when very little time passes between the protected activity and the adverse action. *See e.g.*, *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (finding gap of two months insufficient to prove temporal proximity and causation). Courts also find causation if there is "evidence of retaliatory animus during the intervening period." *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007). Under either prong of the test, a plaintiff cannot allege causation without demonstrating the decision-maker knew of the protected activity. *Strothers v. City of Laurel*, 895 F.3d 317, 336 (4th Cir. 2018).

Fung fails to allege facts regarding when she made each of her reports, and without these facts, the Court cannot find causation through temporal proximity. Likewise, she fails to allege

---

[8]    As Fung merely provides conclusory allegations regarding Liberty's alleged "swatting" of her home, the Court does not consider this adverse action for the purposes of Title IX. *Simmons*, 634 F.3d at 768.

10

facts demonstrating Wheeler, Castaneda, or any of her other dissertation chairs knew of her complaints to the Title IX office. Because Fung's complaint is largely silent as to causation, the Court finds she has not stated a retaliation claim under either statute; the Court will Count IV, but will do so without prejudice as amendment may not be futile.

## CONCLUSION

For the above reasons, the Court will grant Liberty's motion to dismiss without prejudice as to Counts III and IV and will grant Liberty's motion to dismiss with prejudice as to Counts I, II and V. Dkt. 31. The Court will also dismiss Fung's pending motion for summary judgment as moot. Dkt. 29.

Although the Court has an obligation to construe Fung's filings liberally due to her status as a *pro se* plaintiff, this obligation is not without limit. The Court puts Fung on notice of her obligation to familiarize herself with and comply with the Federal Rules of Civil Procedure and the Court's Local Rules when submitting filings. The Court further strongly warns Fung that both the inclusion of, or reliance upon, cases that do not exist—or relying on cases that do exist but make vastly different points than those stated in the analysis—are sanctionable offenses under Federal Rule of Civil Procedure 11. The Court takes Liberty's request for Rule 11 sanctions under advisement and will return to it if there are further violations, or at the end of the litigation, whichever comes first. Dkt. 39 at 3.

A separate order will issue.

The Clerk of Court is directed to send a copy of this memorandum opinion to all counsel of record.

Entered this 24th of February, 2026.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE